UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISON

| | |
|---|---|
| THE SURGERY CENTER at 900 NORTH MICHIGAN AVENUE, LLC | ) ) ) CIVIL ACTION NO. 1:15-cv-4336 |
| Plaintiff, | ) ) ) |
| v. | ) ) **JURY DEMANDED** |
| AMERICAN PHYSICIANS ASSURANCE CORPORATION, INC., and AMERICAN PHYSICIANS CAPITAL, INC., | ) ) ) ) |
| Defendants. | ) ) |

## COMPLAINT

For its Complaint, the Plaintiff, The Surgery Center at 900 North Michigan Avenue, LLC hereby states and alleges as follows:

## THE NATURE OF THE ACTION

1. American Physicians Assurance Corporation, Inc. and American Physicians Capital, Inc. (collectively "APAC") are Michigan insurance companies. APAC issued a professional liability insurance policy to Plaintiff, The Surgery Center at 900 North Michigan Avenue, LLC ("The Surgery Center") that provided $1 million ceiling on coverage for a single occurrence.

2. While the policy was in effect, The Surgery Center was sued by a young woman by the name of Gwendolyn Tate who had been rendered a quadriplegic due to complications from a routine surgical procedure performed at The Surgery Center located in Chicago, Illinois ("Underlying Litigation.")

3. APAC accepted the tender of the defense and retained Defense Counsel it knew would favor its interests over the interests of the insured.

4. Prior to trial, Ms. Tate made a policy limit settlement demand on APAC for $1 million. APAC refused to negotiate in any way whatsoever, and rejected the demand.

5. The case went to trial, and a judgment for $5.25 million was entered against The Surgery Center.

6. The Surgery Center alleges that APAC did not act in good faith, breached fiduciary duties and the insurance contract by: (i) intentionally failing to settle and negotiate; (ii) retaining Defense Counsel it knew would favor its interests over the interests of The Surgery Center; and (iii) gambling with The Surgery Center's money by foregoing reasonable opportunities to settle the claim on terms that would have protected The Surgery Center against an excess judgment.

## THE PARTIES

7. The Plaintiff, the insured, The Surgery Center is an ambulatory surgery center that provides a cost-effective alternative to hospital-based surgeries in Illinois.

8. The Defendant American Physicians Capital, Inc., ("AP CAPITAL") is an insurance holding company that writes medical professional liability insurance through its primary subsidiary, American Physicians Assurance Corporation, Inc. ("APAC"). At all times relevant hereto, AP CAPITAL was licensed to and was doing business in Illinois.

9. The Defendant APAC is a subsidiary of AP CAPITAL. APAC was licensed to and was doing business in Illinois as an insurance company that sold professional liability policies of insurance in Illinois. APAC sold insurance to The Surgery Center.

## JURISDICTIONAL STATEMENT

10. The Surgery Center is a citizen of the State of Illinois. The Surgery Center is a citizen of the State of Illinois because it is an Illinois limited liability company whose citizenship is determined by the citizenship of all of its members.

11. The Surgery Center's members are citizens of the State of Illinois. The Surgery Center has eight (8) members: Steven Stryker, M.D., Neeraj Jain, M.D., Ron Michael, M.D., Peter Geldner, M.D., John McMahan, M.D., Ilan Tur-Kaspa, M.D., Thomas Mustoe, M.D. and 900 North Equity Holdings, LLC.

12. Members Steven Stryker, M.D., Neeraj Jain, M.D., Ron Michael, M.D., Peter Geldner, M.D., John McMahan, M.D., Ilan Tur-Kaspa, M.D., Thomas Mustoe, M,.D. currently reside in and are citizens of the State of Illinois.

13. Member 900 North Equity Holdings, LLC is a citizen of the State of Illinois. 900 North Equity Holdings, LLC is a citizen of the State of Illinois because it is an Illinois limited liability company whose citizenship is determined by the citizenship of all of its members.

14. Member 900 North Equity Holdings, LLC is an Illinois limited liability corporation that has five (5) members: Mandan Farahati, M.D., Nader Bozorgi, M.D., Guita Bozorgi Griffiths, M.D., Kenny Bozorgi, M.D. and K&G Investment Trust.

15. Members Mandan Farahati, M.D., Nader Bozorgi, M.D., Guita Bozorgi Griffiths, M.D., Kenny Bozorgi, M.D. reside in and are citizens of the State of Illinois.

16. K&G Investment Trust is a citizen of the State of Illinois. A trust's citizenship is that of the trustees. The trustee of the K&G Investment Trust is Mandan Farahati, M.D. The trustee, Mandan Farahati M.D. resides in and is a citizen of the State of Illinois.

17. The Defendants AP CAPITAL and APAC are citizens of the State of Michigan. A corporation is a citizen of its incorporation state and the state where it maintains its principal place of business. AP CAPITAL is a Michigan corporation with its principal place of business in East Lansing, Michigan. The Defendant APAC is a Michigan corporation with its principal place of business in East Lansing, Michigan.

18. Because Plaintiff is a citizen of the State of Illinois and Defendants are citizens of the State of Michigan, there is complete diversity of citizenship. The matter in controversy in this case exceeds the sum or value of $75,000.00, exclusive of interest and costs. Therefore, this action is within this Court's original jurisdiction under 28 U.S.C. § 1332.

19. Venue is proper under 28 U.S.C.A. § 1391 in that this action has been brought within the judicial district in which the claim arose, and within which each Defendant is subject to personal jurisdiction.

## BACKGROUND

20. APAC was an insurer of The Surgery Center for a six-year period, from February 1, 1999 to February 1, 2005. During that time, The Surgery Center consistently purchased and APAC provided a policy with a $1,000,000 limit of liability for each claim and $3,000,000 annual aggregate policy of insurance for one year policy periods. During the six-year period, The Surgery Center paid APAC in excess of $320,000.00 for insurance premiums.

### The Underlying Litigation

21. On November 26, 2002, 34 year old Gwendolyn Tate, the plaintiff in the Underlying Litigation, underwent surgery at The Surgery Center. The surgery was an open laparoscopy for chronic pelvic pain and fibroid uterus.

22. Ms. Tate subsequently had complications rendering her a quadriplegic.

23. On May 1, 2003, Ms. Tate filed a lawsuit alleging negligence against The Surgery Center and Dr. Hasson in the Circuit Court of Cook County, Illinois, Case No. 03L 006090.

24. The Surgery Center was served the summons and complaint on June 10, 2003.

## APAC Retains Insurance Defense Counsel in Chicago

25. On June 26, 2003, APAC formally retained Defense Counsel to defend the interests of TSC. APAC also informed TSC it would be "working very closely with [Plaintiff's] assigned defense counsel."

26. Defense Counsel had a lucrative business relationship with APAC because APAC regularly retained Defense Counsel to defend its insureds in medical malpractice litigation. APAC did not inform The Surgery Center of the extensive business and social relationship it had with Defense Counsel.

## APAC Knew of the High Probability of an Adverse Excess Verdict

27. At all relevant times, APAC and Defense Counsel were aware of the severity of Ms. Tate's claimed injuries. Prior to the trial in the Underlying Litigation, APAC and Defense Counsel knew that the probability of a liability finding was significant and that in the event of a liability finding the amount of probable damages based on the extent of Ms. Tate's injuries would greatly exceed the $1 million APAC policy. See Group Exhibit A containing letters dated September 4, 2003, September 11, 2003, and November 19, 2003, from Defense Counsel to APAC informing APAC of the severity of Ms. Tate's injuries.

28. In fact, as of February 4, 2004, APAC knew that the potential adverse jury verdict could easily be "in the range of $10 million or more." See Exhibit B.

29. APAC Reserve Evaluation Forms reflect the claim having a Full Liability Value of $8 million and a 70% chance of losing. See Exhibit C.

5

30. On August 3, 2007, during pre-trial motions, the court granted Defense Counsel's motion for summary judgment based on lack of proximate cause evidence related to the discharge allegations.

### The Appellate Court Remand

31. On December 4, 2009, the Illinois Appellate Court for the First Judicial District remanded the case back to the trial court finding sufficient proximate cause evidence for the case to go to a jury. See Exhibit D.

32. On December 15, 2009, Defense Counsel informed The Surgery Center of the Appellate Court's mandate and advised The Surgery Center it was "likely" the case would proceed to trial.

33. On December 16, 2009, Defense Counsel sent nearly an identical email to APAC. However, Defense Counsel's email to APAC had one additional paragraph notifying APAC that the "discharge theory was a question of fact to be resolved by the jury."

34. Defense Counsel and APAC never informed The Surgery Center that the discharge theory was a question of fact that would go to the jury nor did they inform The Surgery Center of the significance of the appellate remand.

### APAC Removes Defense Counsel Attorney Over The Surgery Center's Objection

35. On February 24, 2010, Defense Counsel informed The Surgery Center that the lawsuit had been set for trial on May 24, 2010.

36. Over The Surgery Center's objection, APAC then assigned a new lawyer to the case and refused to allow the prior lawyer to remain on the case as second chair.

37. After the remand, on information and belief, APAC did not require Defense Counsel to provide, in writing, an analysis, comprehensive report, or evaluation of the potential liability and damages prior to the May 24, 2010 trial as it had required in the past.

38. Instead, APAC asked Defense Counsel to provide oral evaluations; these evaluations were never communicated to The Surgery Center.

39. On April 5, 2010, Defense Counsel traveled to APAC's offices in East Lansing, Michigan, for roundtable meeting concerning the upcoming trial. At that meeting, Defense Counsel provided APAC with a liability evaluation. APAC memorialized the evaluation in a report: "DC believes the P's case is very weak. DC believes-without trying to sound overconfident-that the insured has a 90% chance of winning." See Exhibit E. Defense Counsel's liability evaluation was unreasonable.

40. On April 15, 2010, APAC presented the case to Trial Committee. Defense Counsel again provided the same evaluation that there was a 90% chance of winning. Id.

### Tate's Policy Limit Demand Prior to Trial & APAC's Refusal to Negotiate and Settle

41. On May 11, 2010, Ms. Tate made a settlement demand on APAC for the policy limits of $1,000,000. See Exhibit F.

42. On May 17, 2010, APAC wrote to Ms. Tate's counsel and rejected the policy limit settlement demand. See Exhibit G.

43. That same day, APAC informed The Surgery Center it would not "be entering into any negotiations." See Exhibit H.

44. APAC has sworn under oath that it would have never negotiated in any way whatsoever. See Exhibit I.

45. As a result of Defense Counsel's breach of fiduciary duty, combined with APAC's refusal to negotiate and settle, the case proceeded to trial.

### The Trial

46. During pre-trial rulings, on May 25, 2010, Defense Counsel received the "Day in the Life" Video from Ms. Tate's counsel.

7

47. Over the next three (3) days, APAC worked with Defense Counsel in an attempt to keep the "Day in the Life Video" out of the courtroom. The existence of the Day in the Life Video was never disclosed to The Surgery Center.

48. The Surgery Center saw the "Day in the Life Video" when it was played on the third day of trial.

49. On May 25, 2010, The Surgery Center attended the first day of trial and saw Ms. Tate for the first time. The Surgery Center asked Defense Counsel "what could be done to settle this now?" Defense Counsel reassured The Surgery Center that "all will be well," and "that your feeling is normal."

50. On the second day of trial, an APAC representative was present. The Surgery Center again asked Defense Counsel and the APAC representative, "What could be done now?" Defense Counsel and the APAC representative did not inform The Surgery Center it had options to avoid trial.

51. On June 8, 2010, the jury found The Surgery Center liable and awarded $5.2 million in damages to Ms. Tate. The verdict was reduced to a judgment in the amount of $5.2 million.

52. Shortly after the entry the judgment, APAC informed The Surgery Center that it would only indemnify The Surgery Center for the amount of the APAC Policy, and not the amount of the judgment in excess of the policy.

53. APAC further informed The Surgery Center that it would not post a *supersedeas* bond for the amount of the judgment during the post-trial or appeal period. The Surgery Center was financially unable to post a *supersedeas* bond during the post-trial or appeal period.

54. APAC conduct placed The Surgery Center in a precarious situation where it had a reasonable anticipation of personal liability that could impact its ability to continue to operate its business.

55. As a result, The Surgery Center used its own funds to resolve the Tate lawsuit. The Surgery Center was unable to use those funds for reasonable business purposes and operation. Consequently, The Surgery Center incurred damages to include the funds used to resolve the Tate lawsuit, the expenses incurred by post trial counsel, interest on those funds, and loss of opportunity.

## COUNT I: BAD FAITH/ NEGLIGENCE

56. The Surgery Center incorporates all prior paragraphs as if set forth herein fully at length.

57. The APAC policy of insurance (policy number 72066-320) provided coverage for the Gwendolyn Tate claim. The APAC Policy provided, in pertinent part, that APAC should defend The Surgery Center and pay damages on The Surgery Center's behalf for any professional liability claim that arose from an incident that occurred after the retroactive date and made during the policy period. See Exhibit J.

58. APAC controlled The Surgery Center's defense of the Underlying Litigation. APAC neither reserved its rights nor denied its obligation to indemnify TSC for any losses sustained in connection with the Tate lawsuit.

59. At all times relevant, The Surgery Center placed its trust and confidence in APAC.

60. At all times relevant APAC owed The Surgery Center the following in regard to the covenant of good faith and fair dealing:

> (a) A duty to hire competent defense counsel, including the duty to hire non-conflicted defense counsel with undivided loyalty to The Surgery Center;

9

(b) A duty to give equal consideration to The Surgery Center's interests as it gives to its own interests when deciding whether to try or settle a claim;

(c) A duty to exercise the care that a reasonably careful insurance company would use under circumstances similar to those shown by the evidence in giving as much consideration to The Surgery Center's interests as to its own interests;

(d) A duty to treat The Surgery Center honestly, fairly and in good faith;

(e) A duty thoroughly investigate and evaluate Ms. Tate's claim;

(f) A duty to provide The Surgery Center with sufficient information; and

(g) A duty to negotiate and settle.

61. APAC, in failing to settle Ms. Tate's claim against The Surgery Center, APAC acted in bad faith in one or more of the following respects by breaching the aforementioned duties as follows:

(a) Failing to inform The Surgery Center that a conflict of interest arose between The Surgery Center and APAC when APAC did not accept Ms. Tate's policy limit settlement demand and refused to negotiate;

(b) Facilitating the *sub silentio* implication that Defense Counsel's retention was predicated on their compliance with APAC's interests;

(c) Retaining conflicted Defense Counsel that would favor APAC's interests over The Surgery Center's interests;

(d) Retaining Defense Counsel that would facilitate APAC in gambling with the insured's money;

(e) Failing to give as much consideration to The Surgery Center's interests as it gave to its own interests;

(f) Failing to inform The Surgery Center that The Surgery Center could extinguish any excess exposure it had by APAC's acceptance of Tate's settlement demand for the $1,000,000.00 policy limit;

(g) Failed to properly investigate the claim brought against TSC to understand the effect of the Appellate Court order;

(h) Failing to accept Ms. Tate's May 11, 2010 policy limit settlement demand of $1,000,000.00; and

      (i) Refusing to negotiate settlement in any way whatsoever;

62. The aforesaid acts of APAC directly and proximately caused a judgment to be entered against The Surgery Center in excess of the APAC Policy limits of liability.

63. APAC acted veraciously and unreasonably in its handling of the Tate claim. Had APAC acted in good faith, The Surgery Center would not have been exposed to a judgment in excess of the policy limits.

## COUNT II: BREACH OF CONTRACT

64. On or before February 1, 2003, APAC agreed to renew The Surgery Center's Health Care Professional Liability Policy of insurance for a premium of $62,968.000.

65. The Surgery Center paid the premium and APAC issued the renewal policy of insurance. As a result, an insurance contract existed.

66. The terms of the contract inter alia obligated APAC to select and retain competent counsel; defend any claim that fell within coverage; to give as much consideration to The Surgery Center's interests as it gave to its own interests; and to act in good faith.

67. APAC breached the contract in one or more the following ways:

    (a) Failing to hire competent defense counsel;
    (b) Failing to negotiate; and
    (c) Failing to settle and accept Ms. Tate's May 11, 2010 policy limit settlement demand.

68. APAC's refusal to negotiate and settle the Tate lawsuit for the policy limits was a material breach of Contract.

69. As a direct result of APAC's breach of contract, The Surgery Center suffered damages.

**WHEREFORE**, THE SURGERY CENTER AT 900 NORTH MICHIGANE AVENUE requests judgment in its favor and against AMERICAN PHYSICIANS ASSURANCE

CORPORATION AND AMERICAN CAPITAL, for an amount in excess of $75,000, and for any other relief this Court shall deem just and proper.

**TRIAL BY JURY DEMANDED FOR ALL COUNTS.**

Dated: May 15, 2015

                                              Respectfully submitted,
                                              THE SURGERY CENTER AT 900 N. MICHIGAN AVE.

                                              ____/s/George W. Spellmire_____
                                              Attorney for Plaintiff, The Surgery Center at 900 N. Michigan Ave.

George W. Spellmire
SPELLMIRE LAW FIRM LLC
233 S. Wacker Drive, Suite 5210
Chicago, Illinois  60606
gws@spellmirelaw.com
(312) 258-9400