UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISON

| | | |
|---|---|---|
| THE SURGERY CENTER at 900 NORTH MICHIGAN AVENUE, LLC | ) ) ) | CIVIL ACTION NO. 1:15-cv-04336 |
| Plaintiff, | ) ) ) | |
| | ) ) | Hon. Judge Sharon Johnson Coleman Hon. Jeffrey Cole |
| v. | ) ) | |
| AMERICAN PHYSICIANS ASSURANCE CORPORATION, INC., AMERICAN PHYSICIANS CAPITAL, INC., | ) ) ) ) | **JURY DEMANDED** |
| Defendants. | ) | |

### PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS

NOW COMES plaintiff, Surgery Center at 900 N. Michigan Ave., LLC, and in response to defendants American Physicians Assurance Corporation, Inc. and American Physicians Capital, Inc. (collectively referred to as "defendants" or "APAC") motion to dismiss states as follows:

### PROCEDURAL HISTORY

1. Plaintiff filed its initial complaint alleging one count negligence bad faith and a second count for breach of contract on May 15, 2015 [docket entry no. 1]. Defendants moved to dismiss. On December 30, 2015, this Court denied defendants' motion to dismiss plaintiff's negligence breach of fiduciary duty claim and gave leave to refile the breach of contract claim [docket entry no. 16].

2. On May 16, 2016, plaintiff moved to amend its complaint to add a count for institutional liability breach of fiduciary duty and punitive damages (plaintiff's first amended complaint "FAC") [docket entry no. 28]. Defendants opposed plaintiff's motion for leave to file the FAC [docket entry no. 38].

3. On August 16, 2016, this Court denied defendants' motion and gave plaintiff leave to file its FAC [docket entry no. 51]. Plaintiff filed the FAC with this Court on August 17,

2016 [docket entry no. 52]. On September 7, 2016, defendants moved to dismiss Count II of plaintiff's FAC [docket entry no. 54].

## STATEMENT OF FACTS

4. Count II of plaintiff's FAC alleges separate and independent breaches of fiduciary duty against defendants. The core of Count II sounds on plaintiff's claim that in order to maximize its own legal and financial interests, APAC intentionally retained defense counsel, (Lowis & Gellen or "L&G") that it knew would favor its interests over the interests of The Surgery Center due to the substantial financial relationship between APAC and L&G. FAC¶¶61(d), 67, 85(d).

5. Count II alleges that APAC, along with L&G, engaged in a course of conduct that was intended to maximize APAC's legal and financial interests at the expense of and to the detriment of the legal and financial interests of The Surgery Center. FAC¶82-83. As bases for this claim, Count II of the FAC avers that APAC through its agents, including L&G and employees made various material omissions and misrepresentations (FAC¶81) throughout the pendency of the Tate claim that prevented The Surgery Center from evaluating the true extent of its financial exposure, and specifically to prevent The Surgery Center from retaining personal and independent counsel. FAC¶83.

6. Plaintiff further alleges in support of its claim for punitive damages that APAC breached its fiduciary duties to The Surgery Center and willfully and wantonly acted with utter indifference to and with reckless conscious disregard for the legal and financial interests of its insured by refusing to negotiate settlement despite numerous attempts to do so within policy limits and also by refusing to accept two $1 million settlement demands despite reasonable knowing there was more than a reasonable probability The Surgery Center would be found liable for an excess judgment. FAC¶¶81-85.

**ARGUMENT**

7.	Defendants argue Count II of the FAC should be dismissed because certain allegations contained in paragraph 81 of Count II sound in fraud, but fail to meet, the heightened pleading requirements of Rule 9(b).  Def. Motion at 1. Defendants' first mistake, however, is their interpretation of Rule 9(b). According to defendants' motion, if Rule (9b) applies, then every aspect in Count II must be plead to a higher standard. Even in the realm of specifics, however, Rule 9(b) does not impose "full-scale fact pleading in a fraud case." <u>Bankers Trust Co. v. Old Republic Insurance Co.</u>, et al., 959 F.2d 677, 683 (7th Cir. 1992).

8.	Nonetheless, even if the alleged conduct is sufficient to bring Count II within Rule 9(b) ambit, plaintiff has plead its averment of fraud with the particularity required by Rule 9(b).  The FAC contained sufficient allegations to enable defendants to "figure out from the complaint the what, where, when fraud charge against it." <u>Sears v. Likens</u>, 912 F.2d 889, 893 (7th Cir. 1990); <u>Rohlfing v. Mano Care, Inc</u>. 172 F.R.D. 330, 347 (N.D. Ill. 1997) ("the allegations must be specific enough to provide defendants with a general outline of how the alleged fraud scheme operated and their purported role in the scheme.")  Although taken alone paragraph 81 may not specifically meet Rule 9(b)'s requirements, "…it need not contain all the necessary information, so long as it is found elsewhere in the complaint." <u>Rogers v. Baxter Intern., Inc.</u> 417 F.Supp. 2d 974, 985 (2006).  Indeed, here "[a]ll the acts alleged to constitute fraud by [APAC] are set forth, with dates, in the complaint; no more was required." <u>Fidelity Nat. Title Ins. Co. of New York v. Intercounty National</u>, 412 F.3d 745 (7th Cir. 2005).

9.	The exhibits attached to the FAC also provide sufficient particularity concerning the allegations in Count II.  "In considering a Rule 12(b)(6) motion, the Court can consider the complaint, any attachments thereto, and documents referenced in the complaint that are central to

3

the plaintiff's claims. <u>Freedom v. Citifinancial, LLC</u>, No. 15 C 10135, 2016 WL 4060510, at *2 (N.D. Ill. July 25, 2016) citing <u>Bogie v. Rosenberg</u>, 705 F.3d 603, 609 (7th Cir. 2013).

10. Accordingly, the FAC adequately identifies the time, place and contents of the omissions or misrepresentations. It describes the statements with particularity and even quotes them in some instances. The exhibits attached to the FAC identify who made the misrepresentations or omissions. Furthermore, the FAC identifies and attaches the documents which contain these statements. The FAC also alleges the facts which the statements misrepresented or failed to disclose. Further, Count II "incorporates by reference all of the statement-identifying paragraphs as allowed under Fed. Rule 10(c)." <u>Schwartz v. Celestial Seasonings, Inc.</u>, 124 F.3d 1246 (1997). Taking into consideration the FAC in entirety and the exhibits, plaintiff alleges the breach of fiduciary duty claims with sufficient particularity. <u>Id.</u> citing <u>Nolan Bros. Inc. v. United States</u>, 266 F.2d 143, 146 (10th Cir. 1959) (sufficiency of the complaint must be judged by the complaint in entirety, rather than piecemeal fashion.) Accordingly, Count II should not be dismissed.

**Paragraph 81(a)**

11. Paragraph 81(a) alleges that not just APAC, but also L&G attorneys, concealed the film's existence from The Surgery Center. FAC¶81. The FAC avers that during pre-trial rulings on <u>May 25, 2010</u>, L&G received the "day in the life video" and that for the next three days, L&G fought to keep it out of court. FAC¶¶46-47. The FAC also alleges that the existence of the "day in the life video" was never disclosed to The Surgery Center, and that it saw the video for the first time when it was played during trial. FAC¶¶47-48.

12. Plaintiff's allegations concerning APAC and L&Gs concealment of the existence of the film are corroborated by APAC's Comprehensive Report to File ("Report") which was attached to the FAC as Exhibit E. The Report identifies APAC's claim representative as Shelly Oblak ("Oblak"), and references her pre-trial and trial notes throughout the Report. The Report

4

also identifies the L&G attorney who was present at the pretrial hearings—Mark Smith. Specifically, the Report contained a note from the pretrial hearing that took place on <u>May 28, 2010</u>:

> Today the judge ruled the Day in the Life Video can be shown during trial and voire dire…I have not seen the video but *per defense counsel, it is sad and she clearly needs 24 hour assistance…*

The Report also corroborates that on <u>June 1, 2010</u> jury selection was completed, and that on <u>June 2, 2010</u>, the "day in the life video" was played in court. Further, on a motion to dismiss, courts can also consider documents that the plaintiff refers to and relies on if they are central to the plaintiff's complaint and there is no dispute about their authenticity. <u>Burke v. 401 N. Wabash Venture, LLC</u>, 714 F.3d 501, 505 (7th Cir. 2013). Consequently, considering defendants' answers to interrogatories no. 4 and 5, it is hard to believe that defendants do not possess sufficient information to form a responsive pleading to the allegation surrounding their concealment of the "day in the life video":

> **Interrogatory No. 4:** Were you made aware of the existence of the Day in the Life Video of Ms. Gwendolyn Tate before jury selection commenced in the Underlying Litigation:
>
> **Answer:**     Yes.
>
> **Interrogatory No. 5:** Did you discuss the Day in the Life Video of Gwendolyn Tate with the Plaintiff? If yes, explain the details of Your discussions, including the date(s) the discussion(s) took place.
>
> **Answer:**     No.

Defendants' Answers to interrogatories are attached hereto as "Exhibit 1."

    13.    The FAC clearly alleges that APAC, by way of Oblak and defense counsel, Smith knew about the "day in the life video" before jury selection commenced and that neither informed The Surgery Center of its existence. FAC¶¶47-48. Plaintiff does not have access to the information concerning who, in additional to Oblak, knew of the film and it should not be

required to plead more than it already has. Discovery is still on going. "The particularity requirement of 9(b) must be relaxed when the plaintiff lacks access to all facts necessary to detail her claim." United States ex rel. Presser v. Acacia Mental Health Clinic, 2016 WL 4555648 (7th Cir. April 6, 2016).

14.     Further, plaintiff adequately alleges that APAC had a duty to disclose and communicate all material facts concerning the litigation, including the existence of the film. FAC¶¶60(f), 66, 68. Under Illinois law, "the insurer's duty to the insured includes not only the hiring of competent counsel, but also keeping abreast of progress and status of litigation in order that it may act intelligently and in good faith on settlement offers." R.C. Wegman Const. Co. v. Admiral Ins. Co., 629 F.3d 724 (2011). The FAC alleges that APAC had an obligation to communicate with the insured regarding the "evolution of the case… the increased potential for higher damages…" Barshaw v. American Family Mut. Ins. Co., 2006 WL 3591318 (N.D. 2006.) The FAC adequately alleges that APAC's omissions were intended to, and reasonably did, induce reliance (FAC¶68) and that APAC and L&G's failures to disclose material information caused its injury. FAC¶¶69, 82-83, 87.

**Paragraph 81(b)**

15.     With respect to 81(b), defendants argue plaintiff did not plead any facts with regard to the allegation that APAC and L&G misrepresented during the course of the trial proceedings it could not settle. Def. Motion at 3. Defendants, however, ignore the entirety of the FAC.

16.     Further, the FAC alleges that APAC owed The Surgery Center fiduciary duty to disclose all information necessary for The Surgery Center to make informed decisions, including settlement. FAC¶¶60(f), 66. The allegations in the FAC clearly allege that during the first two days of trial, plaintiff asked Mark Smith as well as APAC's claim representative, Oblak, what could be done to settle the case (FAC¶¶49-50) and that neither informed The Surgery Center that

had the right to demand APAC settle the case. Further, the FAC specifically alleges that the "foregoing conduct" includes allegations contained in paragraph 81(b), was ratified and approved by APAC's vice president of claims Catherine Shutack, who at all times was acting within the scope of her employment. FAC¶86.

17. When viewed as a whole, the FAC alleges that by failing to inform The Surgery Center of its options when asked, APAC breached its duty to The Surgery Center, and that this was done intentionally in order to prevent The Surgery Center from protecting its own financial and legal interests by demanding settlement so that APAC was able to continue to gamble with the insureds money and take the case to a verdict. FAC¶82.

**Paragraph 81(c)**

18. With respect to 81(c), defendants contend that plaintiff "failed to identify who acting for APA made the alleged misrepresentation regarding a 90% chance of winning." Def. Motion at 4. This is a disingenuous argument. Defendants very well know that L&G attorney Mark Smith rendered the 90% chance of winning evaluation to APAC. FAC¶¶39-40. Defendants single out this allegation and mischaracterize it as though plaintiff alleges that APAC specifically told The Surgery Center it had a 90% chance of winning at trial. This is not true.

19. The core of Count II of the FAC is that APAC intentionally retaining conflicted defense counsel L&G that would favor its interests and facilitate it in gambling with the Surgery Center's money and taking the case to trial. FAC¶¶3, 6, 25-26, 61(b)-(d), 67, 75, 85(d). As bases for this claim, the FAC alleges that after the appellate remand, knowing the case would go to a jury, APAC replaced lead defense counsel with a new L&G attorney (Mark Smith identified in Exhibit E) it knew would render a liability opinion unreasonable in light of the facts and circumstances that would facilitate APAC gambling with the Surgery Center's money by taking the case to trial. FAC¶¶, 35, 38, 75. The FAC alleges that in violation of APAC's own internal

7

procedures, guidelines and defense counsel instructions, APAC did not require Mark Smith to render a written liability report or evaluation after the appellate remand. FAC¶74.

20. The surroundings around the meeting between Mark Smith and APAC where the unrealistic liability evaluation was rendered satisfy Rule 9(b). The FAC alleges on April 5, 2010 and April 15, 2010 L&G rendered the 90% chance of winning opinion during two in person meetings at APAC's offices in Lansing Michigan. FAC¶¶39, 40. APAC's Report attached to the FAC corroborates dates of these meetings, who gave the liability opinion, attorney Mark Smith, and to whom it was given at APAC: Shelly Oblak, Tom Reed, Cathy Shutak, Linda Stefani and Wendy Menzel.

21. When viewed as a whole, the FAC alleges APAC knowingly relied on Mark Smith's unreasonable liability evaluation when it approved the case to go to trial and that APAC further breached its duty to The Surgery Center when it told The Surgery Center the case was defensible (FAC¶75; Exhibit H) despite knowing that an adverse verdict could easily be $10 million or more due to the extent of the injuries (FAC¶70), that the discharge theory was a question of fact that would go to the jury and if the jury finds liability they will want to give this woman money (FAC¶33, 71) and that the appellate court had found sufficient proximate cause evidence (FAC¶72).)

## 81(d) & 85(c) Concealed Conflict of Interest

22. Defendants' argue that plaintiff failed to plead the allegations of paragraphs 81(d) and 85(c) with adequate particularity. To the contrary, plaintiff adequately alleges sufficient facts to support its claim that APAC breached its duty to disclose by concealing the conflict of interest that existed between The Surgery Center and APAC. See In Re ADC Telecommunications, Inc., ERISA Litigation, 2004 WL 1683144 at *8 (D. Minnesota 2004) ("plaintiffs assert defendants failed to adequately and accurately inform …of the significant risks and perils involved...and that they concealed important facts necessary for making informed

8

investment decisions. The complaint sufficiently apprises defendants of how they allegedly breached their duty to disclose.")

23. Paragraph 85 specifically alleges Cathy Shutack, as well defense counsel concealed the conflict. The identities of defense counsel are contained within the exhibits attached to the FAC. Further, the details as to when the conflict arose and what the conflict was are actually plead within the very allegations defendants criticize:

> **Paragraph 81:** APAC, through its agents and employees, made the following material omissions and misrepresentations:
>
> (d) concealed the conflict of interest *that had arisen between APAC and The Surgery Center when APAC refused to accept Ms. Tate's policy limit settlement demands or negotiate settlement in anyway whatsoever*
>
> **Paragraph 85:** At all times relevant, APAC, through its agents and employees, including but not limited to *Catherine Shutack*, breached its fiduciary duty to The Surgery Center and willfully and wantonly acted with utter indifference and with reckless conscious disregard for the legal and financial interests of the insured in one or more of the following ways:
>
> (c) concealed APAC's conflict of interest *with* The Surgery Center *which was presented by the probability of an excess judgment* in an effort to prevent The Surgery Center from retaining independent counsel whom APAC knew would objectively evaluate the claim and would take action to protect The Surgery Center's legal and financial interests.

24. Additional details as to what the conflict of interest was that should have been disclosed and when it should have been disclosed can be found elsewhere in the FAC. FAC¶61(a), 66, 70-77. Specifically, plaintiff alleges that "Shutack knew as of May 11, 2010, when Ms. Tate made her second policy limit settlement demand that there was a substantial likelihood of a verdict adverse to The Surgery Center and that the verdict would likely exceed its $1 million limit of The Surgery Center's available liability coverage." FAC¶¶76, 77. Under Illinois law, "when a potential conflict of interest between insured and insurer arises, the insurance company's duty of good faith requires that it notify the insured." Wegman, 629 F.3d

at 729. "The usual conflict of interest involves the insurance company denying coverage...but the principle is the same when the conflict arises from the relation of the policy limit to the insured's potential liability." Id. The FAC alleges that the conflict between APAC and The Surgery Center was concealed, and never disclosed or explained to The Surgery Center by either Shutack or defense counsel Mark Smith. FAC¶¶78, 80.

25. The allegations in the FAC apprise defendants of how they breached their duty to disclose the conflict of interest as plaintiff adequately alleges that APAC's omissions were intended to, and reasonably did, induce reliance (FAC¶68) and that APAC and L&G's failures to disclose the conflict of interest caused its injury. FAC¶¶69, 82-83, 87.

### Exhibit H does not Negate Plaintiff's Claims in Count II

26. Defendants contend that the Exhibit H demonstrates that "APA expressly advised *an attorney* working for plaintiff that plaintiff *should consider hiring personal counsel*" (Def. Motion at p. 6) and that this contradicts plaintiff's allegation that "APA sought to prevent The Surgery Center from retaining personal counsel." Defendants once again ignore the entirety of the FAC. In doing so, defendants misrepresent to this Court what was actually pleaded in Count II of the FAC and badly mischaracterize the contents of APAC's letter attached to the FAC as Exhibit H ("Oblak letter.")

27. Count II of the FAC pleaded that APAC "failed to *explain* to The Surgery Center the reasons why The Surgery Center should retain personal independent counsel." FAC¶81(f). Plaintiff actually alleges that it was L&G attorneys who failed to *advise* The Surgery Center to retain personal counsel. FAC¶80. Nonetheless, it was APAC's failure to *explain* the protections afforded by independent counsel and L&G's failure to advise (FAC¶80) combined with both their concealment of the conflict of interest that constituted the breaches plaintiff alleges in Count II.

28. Contrary to defendants' interpretation of Oblak's letter, it was not detailed enough to be considered to be "expressly advising" anyone, let alone an "attorney working for plaintiff." Def. Motion at 6. First, the letter was sent to Ms. Griffiths, who although does have a law degree, was at all times acting as the corporate contact, not The Surgery Center's defense attorney. Second, Oblak did not advise plaintiff it "should consider hiring personal counsel" as defendants claim—the letter was void of this language. What Oblak's letter did contain were numerous misstatements of the law and facts. Oblak's letter to Ms. Griffiths stated the following:

> It is important to note that if the plaintiff receives a jury award against you that exceeds your policy limits APA cannot be responsible for payment of any amount in excess of $1,000,000.00—that would be your responsibility. *In light of this, you may want to retain personal counsel, at your own expense, to advise you regarding this issue.*

Exhibit H to FAC (emphasis added).

29. As plaintiff alleges in its FAC, Oblak's letter clearly did not *explain* the reasons why or the protections afforded by retaining and consulting with independent counsel. FAC¶79. In fact, the Oblak letter did not *explain* or clearly define what "issue" The Surgery Center "*may*" want to consult independent counsel about. The issue Oblak failed to define, of course, was the conflict of interest that had arisen between APAC and The Surgery Center—the same conflict of interest plaintiff alleges APAC and L&G never disclosed to The Surgery Center. FAC¶¶78-80.

30. Further, Oblak's letter contained false statements of law concerning The Surgery Center's right to retention of personal counsel. Oblak's letter informs The Surgery Center that if it retained personal counsel, it would be at The Surgery Center's expense. This was a misrepresentation of the applicable law. Under Illinois law, "[i]f, however, there is a conflict of interest between the interests of the insurer and the insured, the insurer must pay for independent counsel selected by the insured." Perma Pipe, Inc. v. Liberty Surplus Insurance Corporation,

11

2014 WL 1600570 at *4 (N.D. Ill. April 21, 2014) citing Md. Cas. Co. v. Peppers, 64 Ill. 2d 187 (1976); see also Wegman, 629 F.3d at 729 ("Once notified by the insurer of the conflict, the insured has the option of hiring a new lawyer, one whose loyalty will be exclusively to him. If he exercises that option, the insurance company will be obligated to reimburse the reasonable expense of the new lawyer.")

31. Moreover, defendants claim that "plaintiff attached this document [Oblak's letter] solely to support the allegation in paragraph 33…" is not accurate. Def. Motion at p. 7. In fact, Oblak's letter corroborates many of plaintiff's claims, including that APAC "misrepresented to The Surgery Center that APAC could not be responsible for any amount in excess of $1 million." FAC¶81(e). Oblak's letter stated, "if the plaintiff receives a jury award against you that exceeds your policy limits APA cannot be responsible for payment of any amount in excess of $1,000,000.00." This too was a false and misleading statement. Under Illinois law, APAC could very well be responsible for payment in excess of the policy limit, if for example, it acted in bad faith. See Wegman, 629 F.3d at 730.

32. Thus, Oblak's letter actually corroborates plaintiff's claims that The Surgery Center was not fully informed of many material matters of fact and law relevant to the conflict of interest that existed between APAC and The Surgery Center and was thereby prevented from making informed decisions, including the decision whether to retain personal counsel. FAC¶69. The FAC alleges that APAC's misrepresentations and omissions, including those contained in Oblak's letter, were intended to prevent The Surgery Center from retaining personal counsel whom APAC knew would demand the case settle within the policy limit. FAC¶83. The FAC adequately alleges that APAC's omissions were intended to, and reasonably did, induce reliance (FAC¶68) and that APAC failures caused its injury. FAC¶¶69, 82-83, 87

**Paragraph 81(d)**

33. Defendants' argument that "plaintiff pleads no facts with particularity as to what either APA or retained counsel did to facilitate it in gambling with the insureds money" ignores the entirety of the FAC. The intentional breach of fiduciary duty plaintiff alleges n Count II is clear: "APAC intentionally retained defense counsel it knew would favor its interests over the interests of the insured due to the substantial financial relationship." FAC¶¶3, 6, 67. The FAC contains numerous allegations detailing specifically how L&G breached its duties to its client, The Surgery Center, in order to assist APAC gambling with its insureds money at trial. FAC ¶¶34, 38-40, 75, 78-80. These allegations are more than specific and detailed enough "to provide defendants with a general outline of how the alleged fraud scheme operated and their purported role in the scheme." Rohlfing, 172 F.R.D. at 347.

**Count II States a Claim for Punitive Damages**

34. Defendants do not contend that punitive damages are never recoverable in insurance bad faith or breach of fiduciary duty cases under Illinois law. Indeed, they concede punitive damages are recoverable and cite to O'Neill v Gallant Ins. Co., 329 Ill. App. 3d 1166, 1177 (5th Dist. 2002.) Defendants argue, however, that plaintiff fails to plead allegations for bad faith required by Powell, and therefore certain of plaintiff's allegations contained in paragraph 85(a) and (b) "do not meet the pleading requirements to establish willful and wanton misconduct justifying punitive damages." Def. motion at p. 9.

35. This Court, however, has already determined that plaintiff has stated a claim for negligence/ bad faith when it denied defendants' first motion to dismiss Count I of plaintiff's initial complaint. Moreover, Count II alleges separate and independent claims of intentional breaches of fiduciary duty. See Wegman, 629 F.3d at 729 ("gambling with the insureds money is a breach of fiduciary duty."); see also Barr Co. v. Safeco Ins. Co. of America, 583 F.Supp.248,

13

256 (1984)("willful and wanton misconduct, however, can also be considered an aggravated form of bad faith. As such it would aver a slight different cause of action…")

36. Further, defendants' argument that plaintiff has not adequately plead facts to justify punitive damages is premature. "Whether punitive damages can be awarded for a particular cause of action is a question of law, but whether a defendant's conduct was sufficiently willful or wanton to justify the imposition of punitive damages is a fact question the for the jury to decide. <u>Taylor v. Wal-Mart Stores, Inc.</u>, 2010 WL 1325094, at *4 (S.D. Ill. Mar. 29, 2010)(internal quotes omitted.) Another problem with defendants' argument lies in their mistaken application of heighted pleading standard to plaintiff's punitive damage claim. "The particularized pleading standard of Federal Rule of Civil Procedure 9(b) does not apply to allegations supporting a claim of punitive damages." <u>Smith v. I-Flow Corp.</u>, 753 F. Supp. 2d 744, 749 (N.D. Ill. 2010). Rule 8(a) requires a plaintiff in every case to allege facts sufficient to "plausibly give rise to an entitlement to relief." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 129 S.Ct. 1937, 1950, 173 L.Ed.2d 868 (2009).

37. Applying the notice pleading standard of Fed. Rule 8, plaintiff adequately alleges a basis for an award of punitive damages. In Illinois, punitive damages may be awarded in a bad faith insurance case when the defendant acted "with an utter indifference and reckless disregard for its policyholders financial welfare." <u>O'Neil</u>, 329 Ill. App.3d at 907. The FAC goes well beyond merely alleging in a conclusory way how and why it contends APAC acted with an utter indifference and reckless disregard for The Surgery Center's financial welfare.

38. The FAC alleges that APAC willfully and wantonly acted with utter indifference to and with reckless conscious disregard for the legal and financial interests of its insured by refusing to negotiate settlement despite numerous attempts to do so within policy limits and also by refusing to accept *two* $1 million settlement demands despite reasonable knowing there was more than a reasonable probability The Surgery Center would be found liable for an excess

14

judgment FAC¶81(a)(b). Plaintiff also alleges specific conduct sufficient to state a plausible claim for punitive damages in paragraph 85, including that APAC intentionally concealed the conflict of interest from The Surgery Center in order to prevent it from evaluating the true extent of its risk and retaining personal counsel. See R.C. Wegman, 629 F.3d at 730 ("…given the duty of good faith, it is strongly motivated to notify the insured of the conflict immediately lest it find itself liable not only for the excess judgment but also for punitive damages.) Accordingly, at this stage in the litigation the FAC contains sufficient allegations to plausibly give rise to a viable claim for punitive damages. See Taylor, 2010 WL 1325094 at *4.

## CONCLUSION

39. The FAC alleges the averments of fraud in support of plaintiff's claims for breach of fiduciary duty and punitive damages with sufficient particularity. The FAC and its exhibits contain sufficient allegations and information to enable defendants to figure out from the complaint the what, where, when fraud charge against it. If, as defendants contend, Count II of the FAC is deficient, plaintiff seeks leave to amend. Fuhrer v. Fuhrer, 292 F.2d 140, 142 (Rule 15(a) shall be liberally interpreted and leave to amend shall be freely granted.)

Respectfully submitted,
THE SURGERY CENTER AT 900 N.
MICHIGAN AVE., LLC
____/s/George W. Spellmire_____
Attorney for Plaintiff, The Surgery Center at 900 N. Michigan Ave., LLC

George W. Spellmire
Jessica L. Dagley
SPELLMIRE LAW FIRM LLC
233 S. Wacker Drive, Suite 5210
Chicago, Illinois  60606
ARDC # 2686007
ARDC # 6315834
gws@spellmirelaw.com
jlw@spellmirelaw.com
 (312) 258-9400

15

## **CERTIFICATE OF SERVICE**

  Pursuant to FED. R. CIV. P. 5(b)(3) and the Northern District of Illinois' LR 5.9, I have thereby electronically served all Filing Users with a copy of Plaintiff's Response to Defendants' Motion to Dismiss.

  I, the undersigned attorney, certify that I have also served a paper copy of Plaintiff's Response to Defendants' Motion to Dismiss as required by FED. R. CIV. P. 5(a) by first class U.S. Mail, proper postage pre-paid, deposited in the U.S. mail depository before 5:00 p.m. on October 4, 2016 upon:

            ____/s/George W. Spellmire_____
            *One of the Attorneys for the Plaintiff*

**Service List:**
James J. Stamos
Benjamin F. Klimek
STAMOS & TRUCCO LLP
One East Wacker Drive, Third Floor
Chicago, Illinois 60601
jstamos@stamostrucco.com
bklimek@stamostrucco.com
Telephone: (312) 630-7979
Facsimile: (312) 630-1183