# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| The Surgery Center at 900 North Michigan Avenue, LLC, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) ) | Case No. 15-cv-04336 |
| | ) ) | Judge Sharon Johnson Coleman |
| American Physicians Assurance Corporation, Inc., and American Physicians Capital, Inc., | ) ) ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff The Surgery Center at 900 North Michigan Avenue, LLC ("The Surgery Center") filed its two count first amended complaint (the "complaint") [52] against American Physicians Assurance Corporation, Inc. and American Physicians Capital, Inc. (collectively, "APAC") alleging APAC acted in bad faith (Count I) and APAC breached its fiduciary duty to The Surgery Center (Count II). APAC moves to dismiss Count II of The Surgery Center's complaint. For the following reasons, APAC's motion to dismiss [54] is granted.

**Background**

The following facts are taken from The Surgery Center's complaint and accepted as true for the purpose of ruling on the instant motion.

APAC provided malpractice insurance to The Surgery Center from 1999-2005. (Dkt. 52 ¶ 20). The policies APAC issued to The Surgery Center had liability limits of $1,000,000 per claim. (*Id.*) In November 2002, Gwendolyn Tate underwent surgery at The Surgery Center. (*Id.* at ¶ 21). Surgery complications rendered Tate quadriplegic. (*Id.* at ¶ 22). Tate subsequently filed suit against

The Surgery Center ("the Tate Suit"). (*Id.* at ¶ 23). APAC hired defense counsel to defend The Surgery Center in the Tate Suit. (*Id.* at ¶ 25).

According to The Surgery Center, APAC knew that there was a significant probability that The Surgery Center would be found liable in the Tate Suit and that the probable damages would greatly exceed the APAC policy liability limit. (*Id.* at ¶ 27). The Cook County Circuit Court granted summary judgment in favor of The Surgery Center and the Illinois Appellate Court reversed, finding that there was sufficient evidence on the issue of proximate cause for the case to go to a jury. (*Id.* at ¶¶ 30, 31). On April 5, 2010, defense counsel provided APAC with a liability evaluation. (*Id.* at ¶ 39). Defense counsel represented to APAC that "that [The Surgery Center] ha[d] a 90% chance of winning." (*Id.* at 39). Defense counsel made the same 90% representation to an APAC trial committee on April 15, 2010. (*Id.* at ¶ 40).

Tate twice offered to settle the matter for $1,000,000. (*Id.* at ¶¶ 41, 76). On May 17, 2010, Shelly Oblak ("Oblak"), an APAC claim representative, informed The Surgery Center that APAC rejected Tate's May 11, 2010 settlement offer and that it would not "be entering into any negotiations." (Dkt. 52-8 at 1) ("Oblak letter"); (Dkt. 52 ¶¶ 42, 43). On May 25, 2010, during pre-trial proceedings, defense counsel and APAC became aware of a "Day in the Life" video; The Surgery Center was never made aware of this video. (Dkt. 52 ¶¶ 46, 47). Unfortunately, The Surgery Center does not describe the video in the complaint. During the course of the trial, The Surgery Center twice asked defense counsel and APAC if there was anything that could be done to settle the suit. (*Id.* at ¶¶ 49, 50). At the conclusion of the trial, a jury found The Surgery Center liable and awarded Tate $5,200,000. (*Id.* at ¶ 51). APAC informed The Surgery Center that it would only indemnify The Surgery Center for the policy liability limit. (*Id.* at ¶ 52). The Surgery Center subsequently brought this suit.

2

**Legal Standard**

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint, not the merits of the allegations. A complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (citation omitted). A party must plead any allegations that sound in fraud with particularity. Fed. R. Civ. P. 9(b).

**Discussion**

APAC argues that Count II of the complaint should be dismissed because The Surgery Center failed to satisfy the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). The Surgery Center claims that APAC owed it a fiduciary duty to keep it informed of developments in the Tate Suit and that APAC breached this duty via a series of misrepresentations and omissions identified in paragraphs 81(a)-(f) of the complaint. The Surgery Center alleges that the misrepresentations and omissions were intended to prevent The Surgery Center from evaluating the extent of its financial exposure in the Tate Suit and retaining independent counsel. (Dkt. 52 ¶ 83). APAC contends that the misrepresentations and omissions The Surgery Center identifies in paragraph 81 are not pleaded with sufficient particularity. The Surgery Center claims that the details required by Rule 9(b) are included in the complaint and the exhibits attached to it.

"A fiduciary duty claim premised on the allegation that a defendant knowingly misled a plaintiff . . . sounds in fraud and therefore is subject to the heightened pleading standards of Rule 9(b)." *Cornielsen v. Infinium Capital Holdings,* 168 F. Supp. 3d 1033, 1047 (N. D. Ill. Mar. 3, 2016) (Wood, J.) (citation omitted). To satisfy Rule 9(b), a plaintiff must allege the who, what, when, where, and how of the fraud – "the first paragraph of any newspaper story." *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990). Where the fraud is perpetrated through omissions, a plaintiff must allege "when and where [the omissions] occurred, and what material facts should have

been disclosed at what times." *McMahan v. Deutsche Bank AG*, 938 F. Supp. 2d 795, 805-06 (N.D. Ill. 2013) (Zagel, J.). To show that a defendant omitted a material fact, a plaintiff must allege that he would have acted differently if he had been aware of the omitted information. *Schwitters v. Tomlinson*, No. 95 C 50043, 1996 WL 54240, at *2, 7 (N.D. Ill. Feb. 9, 1996) (Reinhard, J.) (citation omitted). Rule 9(b) will be satisfied so long as the details it requires are found somewhere in the complaint. *Fidelity Nat'l Title Ins. Co. of N.Y. v. Intercounty Nat'l Title Ins. Co.*, 412 F.3d 745, 749 (7th Cir. 2005). APAC does not dispute The Surgery Center's contention that the Court may also look to exhibits attached to the complaint for the details required by Rule 9(b). The Court has considered the entirety of the complaint and the attached exhibits and makes the following findings.

The Surgery Center first alleges that APAC breached its fiduciary duty by concealing the "Day in the Life" video. (Dkt. 52 ¶ 81(a)). The Surgery Center alleges that APAC and defense counsel fought to have the video excluded following its disclosure on May 25, 2010. (*Id.* at ¶¶ 46, 47). Oblak was aware of this video. (Dkt. 52-5 at 00328). APAC argues, and the Court agrees, that The Surgery Center fails to identify who should have notified The Surgery Center of the video and when it should have been notified. It also fails to identify how the disclosure of the video would have cause The Surgery Center to act differently.

Next, The Surgery Center claims that APAC breached its fiduciary duty by "[r]epeatedly misrepresent[ing] to The Surgery Center during the course of the trial proceedings that it could not settle." (Dkt. 52 ¶ 81(b)). The Court notes that the complaint does not clarify whether "it" refers to APAC or The Surgery Center. Apart from the conclusory statement in paragraph 81(b), The Surgery Center does not identify any specific individual from APAC who affirmatively represented that the Tate Suit could not settle. It also fails to identify to whom APAC made such alleged misrepresentations, and when the alleged misrepresentations were made.

4

The Surgery Center next alleges that APAC breached its fiduciary duty by representing to The Surgery Center that there was a 90% chance of success in the Tate Suit. (Dkt. 52 ¶ 81(c)). The Surgery Center has shown that defense counsel made this representation to various APAC employees which are listed at Dkt. 52-5 at 000319. There are no allegations in the complaint, however, that APAC ever made this representation to The Surgery Center, let alone who from APAC or when APAC made this representation. In fact, The Surgery Center affirmatively alleges that APAC never communicated defense counsel's representations to it. (Dkt. 52 at ¶¶ 38-40). The Surgery Center also alleges that APAC further breached its fiduciary duty through the Oblak letter, which indicated that the Tate Suit was "defensible." (Dkt. 62 at ¶ 21; Dkt. 52-8 at 1). The Surgery Center fails to show how this is a misrepresentation.

APAC allegedly breached its fiduciary duty by failing to disclose APAC's conflict of interest. (Dkt. 52 ¶¶ 81(d), 85(c)). The complaint alleges that there was a conflict of interest between The Surgery Center and APAC based on a "probable finding of liability [in the Tate Suit] and a verdict in excess of the policy limits." (*Id.* at 52 ¶ 78). As far as the Court can tell, The Surgery Center's position that a conflict of interest existed is rooted in *R.C. Wegman Const. Co. v. Admiral Ins. Co.*, 629 F.3d 724 (7th Cir. 2011). The Seventh Circuit, on petition for rehearing, denied that it held that "where there is a possibility of a verdict in excess of policy limits, there is a conflict of interest between the insurer and the insured." *R.C. Wegman Const. Co. v. Admiral Ins. Co.*, 634 F.3d 371, 371 (7th Cir. 2011) ("*Wegman II*"). The conclusion that a conflict existed was based on factors including, but not limited to, the insurer's failure to warn the insured of a likelihood of an excess judgment and the fact that the insured only discovered that the case was going to trial via an accidental conversation days before the trial, in addition to the possibility of an excess verdict. *Id.* at 372. Here, The Surgery Center was aware that an excess judgment was possible in the Tate Suit and it

was aware of the impending trial. The Court finds that The Surgery Center has not pleaded a conflict of interest.

If the Court were to find that the allegations in the complaint sufficiently pleaded a conflict, the complaint still lacks sufficient particularity to satisfy Rule 9(b). The Surgery Center fails to allege when the "conflict" should have been disclosed or explained to The Surgery Center.

APAC also allegedly breached its fiduciary duty when it "[m]isrepresented to The Surgery Center that APAC could not be responsible for any amount in excess of $1 million." (Dkt. 52 ¶ 81(e)). This allegation is based on the Oblak letter, which informed The Surgery Center that if Tate received a jury award against The Surgery Center that exceeded its policy limits, "APA[C] cannot be responsible for payment of any amount in excess of $1,000,000 — that would be [The Surgery Center's] responsibility." (Dkt. 52-8 at 1). The Surgery Center's argument that this statement is a misrepresentation of the law is without merit. On its face, the Oblak letter discusses insurance policy limits, not the parties' liability in any subsequent proceeding. The Surgery Center fails to show how the Oblak letter misrepresents the insurance policy.

Finally, The Surgery Center alleges that APAC breached its fiduciary duty by failing to explain to The Surgery Center why it should have retained independent counsel to advise it on matters related to the Tate Suit. (Dkt. 52 ¶ 81(f)). The Court does not rule on whether APAC had this obligation, but even if such a duty were imposed on APAC, this allegation is not pleaded with sufficient particularity to satisfy Rule 9(b). The Surgery Center fails to allege to whom the explanation should have been made, and when it should have been made.

The Court dismisses Count II based on The Surgery Center's failure to satisfy Rule 9(b) but finds it prudent to comment on APAC's other arguments. APAC's second argument for dismissal stems from the Oblak letter, which suggested The Surgery Center may want to retain personal counsel. (Dkt. 52-8 at 1). APAC asserts this letter negates The Surgery Center's claim that APAC

intended to prevent The Surgery Center from retaining independent counsel to evaluate its exposure in the Tate Suit. (Dkt. 52 ¶ 83). In the Court's view, the Oblak letter does not negate the allegations in the paragraph 83 of the complaint and is not fatal to Count II. Had the allegations supporting Count II been properly pled, the complaint, taken as a whole, could support The Surgery Center's claim in paragraph 83 of the complaint. Nevertheless, Count II is not properly pled for the reasons discussed above.

APAC's final argument is that Count II should be dismissed because the complaint fails to allege facts sufficient to justify an award of punitive damages – the only relief sought in Count II. In light of the Court dismissing Count II for failure to plead with sufficient particularity, and given that all of the evidence regarding the alleged breach of fiduciary duty has yet to be presented, the Court finds that APAC's argument is premature.

**Conclusion**

For the foregoing reasons, APAC's motion to dismiss [54] is granted without prejudice. The Surgery Center is granted leave to file an amended complaint consistent with this order within 30 days.

IT IS SO ORDERED.

_____
SHARON JOHNSON COLEMAN
United States District Judge

DATED: December 9, 2016